# PARTNERSHIP AGREEMENT

AGREEMENT made the 13th day of June, 1991, by and between BRUCE E. THUNBERG, hereinafter referred to as BET, of Wakefield, Rhode Island and WAKEFIELD MILL BUILDING INC., of Davisville, Rhode Island, hereinafter referred to as WMBI, a soon to be formed Subchapter S Rhode Island corporation, whose Articles of Incorporation are pending approval by the office of the Secretary of State:

1. NAME AND PURPOSE OF BUSINESS: The parties do hereby form a Rhode Island general partnership under the name of WAKEFIELD MILL PROPERTIES, hereinafter referred to as WMP, to conduct the business of development, acquisition, construction, ownership, sale, lease or rental, of real estate for investment purposes, and to do anything necessary to the foregoing as it pertains to any real estate.

2. OFFICE: The office of the partnership shall be located at 10 High Street, Wakefield, Rhode Island 02879, or at such other location or locations as the partners may from time to time designate.

3. TERM: The term of the partnership shall begin on the signing date of this Agreement and shall continue perpetually from such date, unless sooner terminated as herein provided.

4. CAPITAL: The initial capital of the partnership shall be $0. BET shall contribute a forty-nine (49%) percent interest in the partnership by contributing certain property valued at Five Hundred Ninety-seven Thousand Eight Hundred ($597,800.00) Dollars and subject to a debt in the same amount to Ocean State Jobbers, Inc., a Rhode Island corporation. WMBI shall contribute a fifty-one (51%) percent interest in the partnership, by contributing certain property valued at Six Hundred Twenty-two Thousand Two Hundred ($622,200.00) Dollars and subject to a debt in the same amount to Ocean State Jobbers, Inc., a Rhode Island corporation.

The debt to Ocean State Jobbers, Inc. shall be evidenced by a Promissory Note secured by a first mortgage on the partnership property located at 10 High Street, Wakefield, Rhode Island.

The partnership shall make interest payments only on the Promissory Note for eighteen (18) months after which time the entire principal balance shall become due and payable, at the rate of prime which prime rate shall be determined as the prime lending rate used by Shawmut Bank of Rhode Island Inc. Within ten (10) days of the signing of this Agreement, the partnership

MP

shall pay to Ocean State Jobbers, Inc. the sum of Seven Hundred Fifty ($750.00) Dollars in consideration of the One Hundred Thousand ($100,000.00) Dollar deposit advanced by Ocean State Jobbers, Inc. to the partnership.

5. FINAL CAPITAL CONTRIBUTION OF PARTNERS: The following persons and entity shall be partners and shall ultimately contribute to the capital of the partnership the cash amounts set opposite their names and shall be considered as having the following percentage of ownership:

| Partner: | Contribution: | Partnership Interest: |
|---|---|---|
| Bruce E. Thunberg | $ 150,000.00 | 50% |
| Wakefield Mill Building Inc. | $ 400,000.00 | 50% |

Upon the signing of this Agreement, WMBI will contribute as its initial capital contribution, the same amount of capital as contributed by BET and will own fifty-one (51%) percent of the partnership interest. During the eighteen (18) months following the signing of this Agreement, WMBI will match BET's contribution dollar for dollar up to the sum of One Hundred Fifty Thousand ($150,000.00) Dollars. Thereafter, WMBI will contribute an additional Two Hundred Fifty Thousand ($250,000.00) Dollars within thirty (30) days from the date that BET shall have completed payment of his One Hundred Fifty Thousand ($150,000.00) Dollar capital contribution and at that point, and only after BET shall have completed payment of his One Hundred Fifty Thousand ($150,000.00) Dollar capital contribution, shall the WMBI partnership interest be reduced from fifty-one (51%) percent to fifty (50%) percent. If WMBI fails to contribute the additional Two Hundred Fifty Thousand ($250,000.00) Dollars within thirty (30) days of the date it is required to as set forth above, then it shall be given an additional thirty (30) days to make the contribution, otherwise, WMBI's partnership interest shall be reduced proportionately to the total contribution with the sum of Four Hundred Thousand ($400,000.00) Dollars representing a fifty (50%) percent interest in the partnership.

Upon the signing of this Agreement, BET shall own a forty-nine (49%) percent interest in the partnership and shall continue to own a forty-nine (49%) percent interest in the partnership provided that he makes an initial capital contribution of Fifty Thousand ($50,000.00) Dollars to the partnership within the first six (6) months from the date of signing of this Agreement. If BET makes his initial contribution of Fifty Thousand ($50,000.00) Dollars no later than six (6) months from the signing of this Agreement, then the remaining One Hundred Thousand ($100,000.00) Dollars of BET's capital contribution shall be due and payable to the partnership no later than eighteen (18) months from the

signing of this Agreement. Upon the completion of his One Hundred Fifty Thousand ($150,000.00) capital contribution then and only then shall he receive an additional one (1%) percent ownership interest and thus totally own fifty (50%) percent of the partnership interest.

However, in the event, BET, shall fail to make his initial capital contribution of Fifty Thousand ($50,000.00) Dollars within the six (6) months after the signing of this Agreement, then his partnership interest shall drop proportionately to the amount of his contribution with the formula of Seventy-five Thousand ($75,000.00) dollars being equivalent to 25% ownership of the partnership interest. However, notwithstanding the above provision, BET may be allowed to increase his partnership interest to fifty (50%) percent provided he pays the balance of his One Hundred Fifty Thousand ($150,000.00) Dollar capital contribution within one (1) year from the date of the signing of this Agreement.

If BET fails to make his complete capital contribution of One Hundred Fifty Thousand ($150,000.00) Dollars by the end of this eighteen (18) month period, then he shall forever lose any and all right to acquire fifty (50%) percent ownership interest in the partnership and his partnership interest shall be based on the formula set forth above, namely, Seventy-five Thousand ($75,000.00) Dollars shall equal twenty-five (25%) percent of the partnership interest. If BET fails to make a minimum contribution of Twenty-five Thousand ($25,000.00) Dollars within the above eighteen (18) month period, then BET's partnership shall be reduced to zero (0%) percent but BET shall still keep his share of the capital account and receive his funds within thirty (30) days following the eighteen (18) month period.

The capital contributions of the partners shall not be subject to withdrawal.

No partner shall, except with the consent of the other partners, withdraw his capital contribution in whole or in part, or assign, mortgage or sell his share in the partnership or its capital, assets, property or enter into any agreement as a result of which any other person, firm or corporation shall become interested with him in the partnership, or which would make it impossible to carry on the partnership business.

An individual income account shall be maintained for each partner. Profits and losses shall be credited or debited to the individual income account as soon as possible after the close of each fiscal year.

In the event that there is a negative cash flow and/or further capital is needed or required by the partnership, the additional capital shall be contributed by the partners in the respective percentages of ownership hereinabove set forth.

Interest shall be paid on the initial and on any subsequent contributions to the capital of the partnership, at the same rate as is being paid on the first mortgage of the partnership property. In the event that any partner is unable or unwilling to contribute the additional capital as needed above, then the other partner may elect to either advance the additional funds which can be treated as a loan or to make a capital contribution which will result in a change of contribution with percentages to be adjusted on the basis that each partner has contributed $150,000 or to terminate this partnership in accordance with Section 14 of this Agreement.

6. PROFIT AND LOSS: The net profit of the partnership shall be divided among the partners and the net losses of the partnership shall be borne by the partners pro rata, in the respective percentages as determined under Section 5 and Section 6A.

6A. SPECIAL ALLOCATION:

i) Any item of income, gain, loss, deduction, or credit, including depreciation recapture, with respect to any property (other than money) that has been contributed by a partner to the capital of the partnership and which is required to be allocated to the partners for income tax purposes pursuant to Internal Revenue Code Sec. 704(c) so as to take into account the variation between the adjusted basis of such property for federal income tax purposes and its fair market value at the time of contribution shall be allocated to the partners in the manner so required by Internal Revenue Code Sec. 704(c) and the Treasury Regulations thereunder.

ii) To the extent of contributed depreciable property, amortization or depreciation deductions shall be allocated to the partner so contributing the property to the partnership.

iii) To the extent that any portion of any net profits realized upon a sale or other disposition of any asset of the partnership is the result of depreciation claimed, the recapture income shall be allocated to the partners in proportion to the amount of depreciation originally allocated to each partner.

7. PERMANENT FINANCING: The partnership agrees to use its best efforts and to fully cooperate in obtaining permanent financing within eighteen (18) months from the signing of this Agreement. All capital contributions shall first be applied to reduce the partnership's first mortgage indebtedness to Ocean State Jobbers Inc.

8. MANAGEMENT GENERAL DUTIES AND RESTRICTIONS: Unless so determined by the majority vote of the partnership to the

contrary, all of the partners acting unanimously shall be deemed to be the general partners. The majority vote has recognized Bruce E. Thunberg as the initial managing partner. The managing partner shall have full charge of the day to day management, conduct and operation of the partnership in all respects and in all matters relating to the partnership property and must use his best efforts in conducting the business of the partnership, and in maintaining and providing the administration services for the partnership.

The managing partner shall be authorized and empowered to determine all questions relating to the day to day conduct and management of the partnership business. However, no individual partner(s) shall be authorized or empowered without the consent of the all general partners (but with such consent, can be authorized and empowered), on behalf of the partnership, to borrow (from any partner or third party) or make, deliver, or accept any commercial paper, or execute any mortgage, bond, deed, release, or agreement; or purchase or contract to purchase, or sell or contract to sell any property, or compromise or release any of its claims or debts.

9. <u>OUTSIDE ACTIVITIES</u>: Each partner may have other interests and may engage in any business or trade, profession, or employment whatsoever, whether such business, trade, profession, or employment is similar or competing with the purpose of the partnership, on his own account, or in partnership with or as an employee of or as an officer, director, or stockholder of any other person, firm or corporation, and he shall not be required to devote his entire time to the partnership. The managing partner, Bruce E. Thunberg, shall be paid a six (6%) percent commission based on gross rental receipts for his managing partner activities.

9A. In addition all partners shall be reimbursed by the partnership for all out of pocket expenses, and costs. In addition, any partner who procures a ready, willing and able buyer for the partnership property shall receive six (6%) percent of the sales price as compensation. Unless that party procures a buyer through a broker in which case, the compensation shall be reduced pro rata to the percentage of the commission received by the broker.

10. <u>BOOKS</u>:

a) The managing partner shall maintain full and accurate books of account which shall be kept at the principal partnership office. Each partner shall cause to be entered in such books all transactions of or relating to the partnership. Each partner shall have access to and the right to inspect and copy such books and all other partnership records and check.

MP BT

b) Checks shall be drawn on a separate partnership bank account for partnership purposes only..

11. ANNUAL ACCOUNTING: As of the last day of December of each year during the continuance of the partnership, commencing December 31, 1991, a full, true and accurate account shall be made in writing of all of the assets and liabilities of the partnership, and of all of its receipts and disbursements, and the assets, liabilities and income, both gross and net, shall be ascertained, and the net profits or net losses shall be fixed and determined; and the account of each partner shall thereupon be credited or debited, as the case may be, with his share (as specified in Paragraphs 5 and 6) of such net profits or losses. In preparing such account, there shall be charged all expenses of the partnership, and also, all losses and other charges incident or necessary to the carrying on of the purpose of the partnership.

12. WITHDRAWALS: Distributions shall be made only with the majority consent of the partners.

13. LIQUIDATION: Either of the parties may voluntarily or upon the death or insanity of any partner decide to liquidate the partnership in accordance with Section 14.

14. PROCEDURE ON LIQUIDATION: Whenever liquidation of the partnership is provided for herein, the partnership shall proceed with reasonable promptness to liquidate the partnership. The profits and losses during the period of liquidation shall be divided among or be borne by the partners (or the then remaining or surviving partners, as the case may be), including the estate of any deceased partner, in the respective percentages in which they shared in the profits and losses prior to the event which resulted in such liquidation. After the payment of partnership debts, expenses of liquidation, and any loans by partners to the partnership, the proceeds of liquidation, as realized, shall be distributed. First, in discharge of the undrawn profits of the partners and of the estate of any deceased partner, and then proportionately in discharge of the respective capital accounts. Any excess shall be distributed among the surviving partners and the estate of any deceased partner in the respective percentages in which they shared partnership profits immediately prior to the event which resulted in such liquidation. In the event the partnership property is sold within eighteen (18) months of the signing of this Agreement, then the partnership agrees to divide the profits equally after payment of all partnership debts and obligations and partnership capital accounts. In connection with such liquidation, the majority vote of the partnership shall have the sole discretion as to whether to sell any partnership asset, including, but not limited to real estate, and if so, whether at

MP

public or private sale and for what amount and on what terms, or whether (if sale thereof is not required to enable payment of debts, expenses of liquidation, loans by partners, and undrawn profits of the partners) to distribute and transfer the same to and among the partners and the estate of any deceased partner, in kind, by transferring interest therein in the respective percentages in which profits and losses were shared immediately prior to the event which resulted in such liquidation. In the event that the partners determine to sell any real property, they shall not be required to sell the same promptly, but they shall have full right and discretion to determine the time, place, and manner in which such sale or sales shall be had, having due regard to the activity and condition of the real estate market and general financial and economic conditions. In the event that there is no majority vote concerning the procedure used for liquidation of the partnership, then all the partners agree to fully cooperate in selling all of the partnership assets. However, if one of the partners desires to purchase the assets to be sold, that partner so interested shall have a right of first refusal to purchase the partnership assets under the same terms and conditions as is being offered to the general public provided the right of first refusal is exercised in writing within thirty (30) days of the date the property is being offered for sale to the public.

15. PROHIBITED CONDUCT: No partner may without the unanimous consent of the other partner do any of the following acts:

a) Borrow money in the firm name for firm purposes or utilize collateral owned by the partnership as security for such loans;

b) Assign, transfer, pledge, compromise or release any of the claims of or debts due the partnership ;

c) Make, execute or deliver any assignment for the benefit of creditors or any bond, confession of judgment, chattel mortgage, deed, guarantee, indemnity bond, surety bond, or contract to sell or contract of sale of all or substantially all of the property of the partnership;

d) Mortgage any partnership real estate or any interest therein or enter into any contract for any such purpose; and

e) Pledge or assign, or in any manner transfer his interest in the partnership, unless unanimously agreed upon by the partnership, except to the other parties to this Agreement.

16. ARBITRATION: Any controversy or claim arising out of or relating to this Agreement, or to the interpretation, breach, or enforcement thereof, shall be submitted to three (3)

MP

arbitrators and settled by arbitration, in accordance with the provisions of the American Arbitration Association.

17. NOTICES: Wherever provision is made in this Agreement of the giving, service or delivery of any notice, statement or other instrument, such notice shall be deemed to have been duly given, served, and delivered if mailed by United States registered or certified mail, return receipt requested, addressed to the party entitled to receive the same at the address stated in Paragraph 22 of this Agreement; provided, however, that each party hereto may change his mailing address by giving to each other party hereto, by United States registered or certified mail, written notice of election to change such address and of such new address. Except where otherwise specified in this Agreement, any notice, statement or other instrument shall be deemed to have been given, served, and delivered on the date on which such notice was mailed as herein provided.

18. MERGER OF PRIOR AGREEMENTS: This Agreement contains the sole and entire agreement and understanding of the parties with respect to the entire subject matter hereof. Any and all prior discussions, negotiations, commitments, and understandings relating thereto are hereby merged herein. This Agreement cannot be changed or terminated orally, but can be changed only in a written document signed by all of the parties.

19. BENEFIT: The covenants and agreements herein contained shall inure to the benefit of and be binding upon the parties hereto and their respective executors, administrators, successors and assigns.

20. CONFLICTS: All of the partners hereby acknowledge that certain of the parties have a professional relationship with other partners and certain conflict of interest problems or professional ethical problems may arise, and each of the partners being cognizant of these problems hereby waives any and all claim or problem that these conflicts might cause and are satisfied that full disclosures concerning these conflicts have been made and that, notwithstanding these possible conflicts, it is in the best interests of the partnership to continue.

21. NOTICE: All notices to WMBI shall be sent to them at the following address: 46 Koster Road, Davisville, Rhode Island 02852 with a copy to Larry Dub, Esquire, 415 Pawtucket Avenue, Pawtucket, Rhode Island 02860. All notices to Bruce E. Thunberg shall be sent to him at the following address: 10 High Street, Wakefield, RI 02879 with a copy to Peter G. Berman, Esq. and

David Yavner, Esq., 116 East Manning Street, Providence, RI 02906.

IN WITNESS WHEREOF, the parties hereto have hereunder set their names and seals, all as of the day and year first above written on this 9 Page Agreement.

Signed in the presence of:

WITNESS

WITNESS

WAKEFIELD MILL BUILDING, INC.

By:
MARC PERLMAN, its President
46 Koster Road
Davisville, RI 02854

BRUCE E. THUNBERG
10 High Street
Wakefield, RI 02879

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Pawtucket, on the 13th day of June, 1991, before me personally appeared Marc Perlman, to me known and known by me to be the party executing the foregoing instrument and he acknowledged said instrument by him executed to be his free act and deed and his free act and deed in his capacity as President of Wakefield Mill Building Inc. and the free act and deed of Wakefield Mill Building Inc.

Notary Public
Print Name
My Commission Expires 6/13/91

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Pawtucket, on the 13th day of June, 1991, before me personally appeared Bruce E. Thunberg, to me known and known by me to be the party executing the foregoing instrument and he acknowledged said instrument by him executed to be his free act and deed.

Notary Public
Print Name
My Commission Expires 6/13/91

# SECOND AMENDMENT TO PARTNERSHIP AGREEMENT

This Second Amendment to a Partnership Agreement dated August 30, 1993 which relates to the formation of a Rhode Island Partnership known as "WAKEFIELD MILL PROPERTIES", by and between the partners BRUCE E. THUNBERG and WAKEFIELD MILL BUILDING, INC., a Rhode Island Corporation, which Partnership Agreement was dated June 13, 1991.

## WITNESSETH:

WHEREAS, the parties have now reached an agreement concerning the allocation for tax purposes for the historic B.F. Brown House as follows:

1. Bruce E. Thunberg hereby unconditionally assigns his entire gain, loss, tax credit, etc. with respect to the historic B.F. Brown House to Wakefield Mill Building, Inc..

IN WITNESS WHEREOF, the parties have executed this Second Amendment to Partnership Agreement this the 30th day of August, 1993.

PARTNER:

[signature]
BRUCE E. THUNBERG

PARTNER:

WAKEFIELD MILL BUILDING, INC.

By [signature]
MARC PERLMAN
Its President

z:\wp\lexflex\ocean\2-amend

THIRD AMENDMENT TO PARTNERSHIP AGREEMENT

This Third Amendment to a Partnership Agreement dated December 10, 1993 which relates to the formation of a Rhode Island Partnership known as "WAKEFIELD MILL PROPERTIES", by and between the partners BRUCE E. THUNBERG and WAKEFIELD MILL BUILDING, INC., a Rhode Island Corporation, which Partnership Agreement was dated June 13, 1991.

WITNESSETH:

WHEREAS, Paragraph 5 of the Partnership Agreement contained certain capital contribution requirements of the partners and set forth certain dates by which the various partners were required to make certain minimum capital contributions; and

WHEREAS, the parties now wish to extend the deadline for making these certain minimum capital contributions, the parties hereby agree as follows:

1. Each of the partners agree that the time in which Bruce E. Thunberg should make his minimum capital contribution payment to the Partnership as set forth in Paragraph 5 of the Agreement is extended up to and including December 15, 1994.

2. That for the tax calendar years of 1991, 1992 and 1993, the ownership interest of the partners shall be reflected on the book's of the partnership as follows:

| | |
|---|---|
| Bruce E. Thunberg -- | 49% ownership interest in the partnership; |
| Wakefield Mill Building, Inc. -- | 51% ownership interest in the partnership |

IN WITNESS WHEREOF, the parties have executed this Third Amendment to Partnership Agreement this the 10th day of December, 1993.

PARTNER:

BRUCE E. THUNBERG

PARTNER:

WAKEFIELD MILL BUILDING, INC.

By____________________
MARC PERLMAN
Its ____________________

FOURTH AMENDMENT TO PARTNERSHIP AGREEMENT

This Fourth Amendment to Partnership Agreement made on the 6th day of June, 1995, amends that certain Partnership Agreement dated June 13, 1991 that formed a Rhode Island General Partnership known as "WAKEFIELD MILL PROPERTIES", which Partnership Agreement was entered into by and between BRUCE E. THUNBERG, partner, ("Thunberg") and WAKEFIELD MILL BUILDING, INC., a Rhode Island Corporation, partner, ("Wakefield").

WITNESSETH:

WHEREAS, Paragraph 5 of the Partnership Agreement contained certain capital contribution requirements of the partners and set forth certain dates by which the various partners were required to make certain minimum capital contributions; and

WHEREAS, the parties now wish to extend the deadline for making these certain minimum capital contribution;

NOW, THEREFORE, it is agreed as follows:

1. Thunberg promises to pay upon demand to the order of Wakefield Mill Properties, at its principal place of business or at such other place as may be designated in writing by Wakefield Mill Properties to Thunberg, the principal sum of $253,776.03 outstanding as of March 31, 1995 plus any additional advances and loans subsequent to March 31, 1995 as reflected on the books and records of Wakefield Mill Properties and together with interest compounded daily on the unpaid principal balance from time to time outstanding from the date hereof until the entire principal amount due hereunder is paid in full, with interest at a rate equal to one-half (.5%) percent in excess of Rhode Island Hospital Trust National Bank of Providence, Rhode Island's prime rate of interest (the "Prime Rate"). Each time the Prime Rate shall change, the interest rate shall change contemporaneously with such changes in the Prime Rate. Interest only shall be payable on the 1st day of each and every month hereafter until the entire principal amount and any interest due hereunder is paid in full.

2. Each of the partners agree that the time in which Thunberg should make his minimum capital contribution payment to the Partnership as set forth in Paragraph 5 of the Agreement is extended up to and including May 31, 1996; provided however, that prior to Thunberg completing his capital contribution and receiving an additional one (1%) ownership interest during the extension period, Thunberg shall have repaid to Wakefield Mill Properties the outstanding amount of any advances and loans which he has received from Wakefield Mill Properties, together with

accrued interest thereon, and that the Mortgage Deed to Republic Factors Corporation recorded on October 5, 1992 in Land Evidence Records Book 476 at Page 102 shall have been fully discharged.

3. That for the tax calendar years of 1991, 1992, 1993 and 1994, the ownership interest of the partners shall be reflected on the books of the partnership as follows:

Bruce E. Thunberg -- 49% ownership interest in the partnership;

Wakefield Mill Building, Inc. -- 51% ownership interest in the partnership

4. All the remaining terms and conditions of said Partnership Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Fourth Amendment to Partnership Agreement on the date and year first written above.

PARTNER:

______________________________
BRUCE E. THUNBERG

PARTNER:

WAKEFIELD MILL BUILDING, INC.

By______________________________

Its: ______________________________

______________________________
BRUCE E. THUNBERG as an Individual

accrued interest thereon, and that the Mortgage Deed to Republic Factors Corporation recorded on October 5, 1992 in Land Evidence Records Book 476 at Page 102 shall have been fully discharged.

3. That for the tax calendar years of 1991, 1992, 1993 and 1994, the ownership interest of the partners shall be reflected on the books of the partnership as follows:

Bruce E. Thunberg -- 49% ownership interest in the partnership;

Wakefield Mill Building, Inc. -- 51% ownership interest in the partnership

4. All the remaining terms and conditions of said Partnership Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Fourth Amendment to Partnership Agreement on the date and year first written above.

PARTNER:

BRUCE E. THUNBERG

PARTNER:

WAKEFIELD MILL BUILDING, INC.

By ______________________

Its: ______________________

BRUCE E. THUNBERG as an Individual